FILED
2012 Apr-27  PM 02:21
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

|  |  |  |
|---|---|---|
| **ANGIE FULLER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **3:11-cv-1278-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Angie Fuller ("Fuller") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence, and, therefore, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Fuller filed her application for Title II disability insurance benefits and Title

XVI Supplemental Security Income ("SSI") on May 23, 2008, (R. 103, 108),

alleging a disability onset date of May 20, 2008, (R. 103).  Fuller's disability

report alleged that she is unable to work due to bulging and herniated discs,

mental and emotional disorders, attention deficit disorder, fibromyalgia, barets

esophagus, and irritable bowel syndrome.  (R. 129).  After the SSA denied her

applications on September 8, 2008, (R. 78, 81), Fuller requested a hearing on

March 2, 2009, (R. 91), which she received on October 29, 2009 (R. 40).  At the

time of the hearing, Fuller was 35 years old, (R. 42), had a GED and three years

towards an associate's degree, (R. 46), and past relevant work that included light

and semi-skilled work as a filler, sedentary and semi-skilled work as an

information clerk, light and unskilled work as a housekeeper, cashier, and sewing

machine operator, and light and skilled work as a cashier supervisor, (R. 49-50).

Fuller has not engaged in substantial gainful activity since May 20, 2008.  (R. 14).

The ALJ denied Fuller's claims on January 10, 2010, (R. 9), which became

the final decision of the Commissioner when the Appeals Council denied review

on March 28, 2011, (R. 1).  Fuller then filed this action pursuant to section 1631 of

the Act, 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield

automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative

answer to any of the above questions leads either to the next question, or, on steps

three and five, to a finding of disability. A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20

C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can

do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

The court turns now to the ALJ's decision to ascertain whether Fuller is

correct that the ALJ committed reversible error. In that regard, the court notes

that, performing the five step analysis, initially, the ALJ determined that Fuller had

not engaged in substantial gainful activity since her alleged onset date, and

therefore met Step One. (R. 14). Next, the ALJ acknowledged that Fuller's severe

impairments of "degenerative disk disease of the lumbar spine, status post recent

left foot stress fracture, and anxiety" met Step Two. *Id*. The ALJ then proceeded

to the next step and found that Fuller did not satisfy Step Three since she "does

not have an impairment or combination of impairments that meets or medically

equals one of the listed impairments." (R. 19). Although the ALJ answered Step

Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the

ALJ proceeded to Step Four, where he determined that Fuller

> has the residual functional capacity ["RFC"] to perform sedentary work [ ]. [Fuller] can occasionally lift 10 pounds with her right hand and lift 5 to 10 pounds with her left hand, and 20 pounds with both hands. [Fuller] can sit for 1 hour at a time for a total of 6 hours during an 8 hour workday, and stand for 5 minutes at a time and walk for 1 to 2 blocks at a time for a total standing and walking for 2 hours during an 8 hour workday. [Fuller] has moderate limitations in her ability to maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instruction and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting.

(R. 19).  In determining Fuller's RFC, the ALJ assigned

> little weight to [Dr. Roddy's October 27, 2009, opinion] as this assessment is not signed and is totally inconsistent with Dr. Roddy's own treatment records.  Some weight has been given to Dr. Roddy's [October 2, 2009] opinion where he found that [Fuller] had no more than moderate mental limitations.  This opinion is consistent with Dr. Roddy's own treatment notes as well as the medical evidence of record.

(R. 22).  In light of Fuller's RFC, the ALJ held that Fuller was "unable to perform

any past relevant work."  (R. 22).  The ALJ then moved on to Step Five where he

considered Fuller's age, education, work experience, and RFC, and determined

that there are "jobs that exist in significant numbers in the national economy that

[Fuller] can perform."  (R. 23).  As a result, the ALJ answered Step Five in the

negative, and determined that Fuller is not disabled.  (R. 24); *see also McDaniel*,

800 F.2d at 1030.  It is this finding that Fuller challenges in this action.

## V.  Analysis

Fuller contends that the ALJ committed reversible error because he (1)

erroneously discredited the medical source statement of treating physician, Dr.

William Roddy ("Dr. Roddy") and (2) failed to address the vocational expert's

hypothetical regarding Fuller's inability to maintain substantial gainful

employment due to her assessed GAF[1] score of 50.  Doc. 10 at 7.  As discussed

fully below, the court disagrees.

*A.*     *The ALJ considered properly Dr. Roddy's opinions.*

Fuller contends that the ALJ erred when he "discredit[ed] the second

medical source statement of Dr. Roddy, in part, because it fails to contain a

signature" and because it is "totally inconsistent with Dr. Roddy's own treatment

records."[2]  Doc. 10 at 7.  In addressing Fuller's contention, the court notes that the

regulations require the Commissioner to give "more weight to opinions from [a

---

[1]The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000), presents the Global Assessment of Functioning ("GAF") Scales, which is widely used to score the severity of psychiatric illnesses.

[2]Fuller failed to cite any evidence to support her contention.

claimant's] treating sources," to the extent the opinions are supported by "relevant evidence" and consistent "with the record as a whole."  20 C.F.R. § 404-1527(d)(2), (3), and (4).  Unfortunately for Fuller, Dr. Roddy's opinion is neither supported by relevant evidence nor consistent with the record as a whole.  Therefore, Fuller's assertion of error are unavailing.

A review of Dr. Roddy's treatment notes reveals that he treated Fuller from May 8, 2007, through October 19, 2009.  (R. 306-326, 408-431).  Although Dr. Roddy's progress notes are completely illegible, the court can ascertain that on October 2, 2009, Dr. Roddy completed a Mental Medical Source Opinion Form that contains Dr. Roddy's signature and detailed clinical findings regarding his opinion.  (R. 408).  Dr. Roddy opined that Fuller had mild limitations in her ability to respond appropriately to supervisors and coworkers, and no limitations in her ability to respond appropriately to customers or members of the general public.  *Id*. Dr. Roddy commented further that Fuller "has reasonable social graces" and "seems to interact with others pretty well."  *Id*.  Further, Dr. Roddy opined that Fuller had no limitations in her use of judgment in simple, one, or two step work related decisions, mild to moderate limitations in her ability to deal with changes in a routine work setting, mild limitations in her ability to understand, remember, and carry out detailed or complex instructions, and mild to moderate limitations in

her ability to respond to customary work pressures.  (R. 408-409).  Dr. Roddy

commented also that he does "not feel that [Fuller] has from what I believe to be

problems with simple one or two step work related decisions. [Fuller] might in my

opinion have some trouble dealing with changes in a work related setting but not

convinced."  (R. 408).  Dr. Roddy found that Fuller had no limitations and was

"very capable" in her ability to understand, remember, and carry out simple one or

two step instructions and had no or mild limitations in her ability to maintain

attention, concentration or pace for two hours "since she has been on treatment

with Ritalin."[3]  (R. 409).  Finally, Dr. Roddy indicated that Fuller had no or mild

limitations in her ability to maintain activities of daily living.  *Id*.  Importantly,

Dr. Roddy indicated that he did not complete the form based on Fuller's subjective

complaints.  *Id.*

        Three weeks later, on October 27, 2009, Dr. Roddy submitted to Fuller's

counsel an unsigned letter recanting his previous opinion as it relates to her ability

to maintain work related functions.  (R. 414).  Dr. Roddy diagnosed Fuller with

major depressive disorder, recurrent-moderate generalized anxiety disorder,

ADHD, chronic pain disorder with psychological feature and medical conditions,

and assessed her GAF score as 50.  *Id*.  Significantly, Dr. Roddy's letter stated that

---

[3]Ritalin is used to treat symptoms of attention deficit hyperactivity disorder ("ADHD").

Fuller

> has demonstrated some symptom improvement with her medication
> regimen, but continues to suffer from severe anxiety, mood lability,
> chronic back pain, and lack of concentration and attention.

> It is my medical opinion that [Fuller's] severe psychiatric conditions,
> (anxiety, depression and ADHD), coupled with her severe and
> chronic pain as well as her other medical conditions are prohibitive in
> her abilities to maintain gainful employment.

*Id*.  Following the letter was a medical source opinion form, identical to the first

page of the October 2, 2009, form, where Dr. Roddy noted that Fuller had marked

limitations in her ability to respond appropriately to supervisors and coworkers,

use judgment in simple work related decisions, and deal with changes in a routine

work setting.  (R. 415).  Further, Dr. Roddy indicated that Fuller had extreme

limitations in her ability to respond appropriately to customers and the public and

use judgment in detailed or complex work related decisions.  *Id*.  Dr. Roddy did

not include any clinical findings data.

The ALJ gave Dr. Roddy's October 2, 2009, opinion "some weight"

because it was consistent with his own treatment notes and the record as a whole,

and "little weight" to the October 27, 2009, opinion because it was not signed and

totally inconsistent with Dr. Roddy's treatment notes.  Based on the court's review

of the medical record, the ALJ's decision is supported by substantial evidence for

several reasons.  First, nothing in the record suggests that Fuller had a sudden decrease in mental capabilities in October 2009.  In fact, Dr. Roddy's last treatment notes are dated March 6, 2009, (R. 306), and the only records beyond that date are Fuller's medication records.  A review of the medication records reveals that on September 4, 2009, Dr. Roddy prescribed Fuller Ritalin 20mg and Xanax 2mg[4].  (R. 418).  A month later, on October 5, 2009, Dr. Roddy prescribed Fuller Zanaflex,[5] Toprol,[6] Oxycodone 30mg,[7] Ritalin 20mg, and Xanax 2mg.  (R. 417).  Two weeks later, on October 19, 2009, Dr. Roddy again prescribed Fuller only Oxycodone 30mg.  Based on this record, if Plaintiff's condition deteriorated in October 2009, it apparently did not warrant a change in any of her psychotropic medications, further undermining Fuller's contentions.  Indeed, even Dr. Roddy commented in his October 2, 2009, assessment that Fuller's Ritalin controlled her ability to maintain attention, concentration, and pace.  In other words, the record evidence contains no objective medical evidence to substantiate the October 27, 2009, evaluation Dr. Roddy provided for Fuller's counsel in which Dr. Roddy

---

[4]Xanax is used to treat anxiety and panic disorders.

[5]Zanaflex is used to treat muscle spasms.

[6]Toprol is used to treat high blood pressure.

[7]Oxycodone is used to treat moderate to severe pain.

opined for the first time that Fuller's conditions prohibit her maintaining gainful employment.

Moreover, Dr. Roddy's October 2, 2009, evaluation of Fuller is consistent with consulting examining physician, Dr. Bonnie Atkinson's ("Dr. Atkinson"), evaluation.[8]  (R. 22).  On August 7, 2008, Dr. Atkinson completed a Comprehensive Psychological Evaluation on Fuller and determined that Fuller had appropriate orientation, good thought, concentration, and language comprehension, normal memory functions, and appropriate affect.  (R. 280-281). Significantly, Dr. Atkinson opined that Fuller had "sufficient judgment to make acceptable work decisions" and to "direct or manage her own funds," diagnosed Fuller with anxiety disorder, trichotillomania, polysubstance abuse, and dysthymic disorder, and assessed her GAF as 60.[9]  *Id*.

Based on this record, the ALJ's decision to give Dr. Roddy's October 2, 2009, opinion "some weight" and "little weight" to the October 27, 2009, opinion is supported by substantial evidence and the regulations, which require medical

---

[8]The only other psychological evaluation in the record is an August 2008 assessment by the State Agency medical consultant, which the ALJ assigned "little weight" because the consultant "neither examined nor treated [Fuller] and [the consultant] did not have an opportunity to review the medical records submitted at the hearing level."  (R. 22); *see also* 20 C.F.R. § 404.1527(d)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").

[9]A GAF score of 60 indicates moderate symptoms or difficulty in social, occupational, or school functioning.

opinions that are unsupported and inconsistent with the record to receive less weight.  Dr. Roddy's opinions are completely inconsistent with each other, although he completed them only three weeks apart.  Dr. Roddy provided clinical explanations for his October 2 opinion, but failed to do so for the October 27 opinion that forms the basis for Fuller's contention that the ALJ erred.  Lastly, Dr. Roddy's October 27 opinion is inconsistent with Dr. Atkinson's psychological evaluation and is, therefore, inconsistent with other psychological evidence in the record.  Consequently, although Dr. Roddy was Fuller's treating physician, the ALJ's decision to give his opinions "some" and "little" weight is supported by the evidence and consistent with the regulations.[10]

B.      *The ALJ considered properly Fuller's GAF score.*

Lastly, without presenting any evidence to support her contention, Fuller asserts that the ALJ disregarded the vocational expert's hypothetical that an individual with a GAF score of 50 and below is precluded from gainful employment.  Doc. 10 at 7.  This argument is also unpersuasive.

During the hearing, Fuller's counsel and the vocational expert had the following exchange:

---

[10]Interestingly, even Fuller's counsel admitted in the hearing that the difference in Dr. Roddy's October 2, 2009, and October 27, 2009, assessments "is very, very strange."  (R. 65).

> Q.    If an individual is found to have a [GAF] of 50, and that were
>       found to be present over an extended period of time, would that
>       allow for any example of work that would be performed?
> A.    No, if the individual has a GAF [ ] of 50 or less, it would
>       preclude any gainful employment.

(R. 72).  However, this exchange is insufficient to support Fuller's disability

claim.  While the regulations require a finding of disability from a medically

determinable impairment that is expected to last at least 12 months, 20 U.S.C. §

404.1527(a), the hypothetical posited by Fuller's counsel failed to quantify "an

extended period of time."  Moreover, even if the hypothetical accurately stated the

disability requirements, Fuller failed to show that she maintained a GAF score of

50 or less for at least 12 months.  In that regard, although on October 27, 2009, Dr.

Roddy assessed Fuller with a GAF score of 50, (R.414), as discussed, *supra* at

V.A., the ALJ properly assigned Dr. Roddy's opinion little weight because it was

inconsistent with his own treatment notes and the record as a whole, (R. 22).

Furthermore, as the ALJ correctly noted during the hearing, on August 7, 2008,

Dr. Atkinson assessed Fuller's GAF score as 60.  (R. 282).  Therefore, without

more, Fuller has failed to show that her GAF score supports her disability claim.

## VI.  CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination

that Fuller is not disabled is supported by substantial evidence, and that the ALJ

applied proper legal standards in reaching this determination.  Therefore, the

Commissioner's final decision is **AFFIRMED**.  A separate order in accordance

with the memorandum of decision will be entered.

Done the 27th day of April, 2012.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE